DILLON, Judge.
 

 *388
 
 Rico Lamar Barnes ("Defendant") entered an
 
 Alford
 
 plea to the offense of possession with intent to manufacture, sell, and deliver cocaine and received a suspended sentence. Defendant reserved the right to appeal the trial court's denial of his motion to suppress.
 

 I. Background
 

 In January 2013, Defendant visited his cousin Territon Lewis at Mr. Lewis' home. At the time, both men were on supervised probation. During Defendant's visit, Mr. Lewis' parole officer arrived to conduct a search of the residence. City police officers accompanied the parole officer to provide security during the search. Upon entering the residence,
 
 *389
 
 the parole officer found Defendant and recognized him as a probationer, which Defendant confirmed. The officer advised Defendant that he was also subject to the warrantless search because of his probation status, and then placed Defendant in handcuffs "for officer safety." Both Defendant and Mr. Lewis were placed in chairs on the front porch of the residence while officers conducted a search of the residence. Defendant and Mr. Lewis were kept on the porch of the residence, in handcuffs, for approximately forty-five (45) minutes to one hour.
 

 During the search of Mr. Lewis' residence, the parole officer discovered a black leather jacket with what appeared to be crack cocaine concealed in a cigarette pack inside a pocket. After removing the substance from the jacket, the officer stepped onto the porch and asked Defendant and Mr. Lewis who the jacket belonged to. Defendant responded that the jacket was his. The officer then advised Defendant of what she had found inside the jacket, and Defendant stated that he had borrowed the jacket from someone else.
 

 Defendant was charged with possession with intent to manufacture, sell, and deliver cocaine. Defendant filed a motion to suppress his statements made to the parole officer, arguing that the officer failed to advise him of his
 
 Miranda
 
 rights. The trial court denied Defendant's motion to suppress, concluding that although Defendant was handcuffed during the questioning, he was not "in custody" for purposes of
 
 Miranda.
 
 Defendant entered an
 
 Alford
 
 plea, reserving his right to appeal the trial court's denial of his motion to suppress.
 

 II. Analysis
 

 The sole issue on appeal is whether the trial court properly denied Defendant's motion to suppress his statements to the parole officer by concluding that Defendant was not "in custody" for
 
 Miranda
 
 purposes.
 

 *490
 
 Although Defendant was in handcuffs, we hold that, based on the totality of the circumstances, the trial court correctly concluded that Defendant was not "in custody" for purposes of
 
 Miranda
 
 when he made the statements. Therefore, we affirm.
 
 [1]
 

 *390
 
 Both the United States Constitution and the North Carolina Constitution protect a person's privilege against compulsory self-incrimination.
 
 See
 
 U.S. Const. amend. V ; N.C. Const. art. 1 § 23. Regarding this privilege, in its landmark
 
 Miranda
 
 decision, the United States Supreme Court established the rule that statements obtained from a defendant through interrogation
 
 while the defendant is in custody
 
 are inadmissible when the defendant has not first been informed of his constitutional rights.
 
 Miranda v. Arizona,
 

 384 U.S. 436
 
 , 444,
 
 86 S.Ct. 1602
 
 ,
 
 16 L.Ed.2d 694
 
 (1966) (emphasis added). As our own Supreme Court has explained, "the initial inquiry in determining whether
 
 Miranda
 
 warnings were required is whether an individual was 'in custody.' "
 
 State v. Buchanan,
 

 353 N.C. 332
 
 , 337,
 
 543 S.E.2d 823
 
 , 826 (2001). Therefore, our inquiry, here, is whether Defendant was "in custody" for purposes of
 
 Miranda.
 

 Whether an individual is "in custody" depends on the context. "Not all restraints on freedom of movement amount to custody for purposes of
 
 Miranda.
 
 "
 
 Howes v. Fields,
 
 --- U.S. ----,
 
 132 S.Ct. 1181
 
 , 1189,
 
 182 L.Ed.2d 17
 
 (2012). For instance, a prisoner is certainly "in custody" in a general sense; however, a prisoner serving his term is not always "in custody" for
 
 Miranda
 
 purposes.
 

 Id.
 

 at 1191
 
 (stating that "service of a term of imprisonment, without more, is not enough to constitute
 
 Miranda
 
 custody"). In sum, the term "in custody" for
 
 Miranda
 
 purposes, "is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion."
 

 Id.
 

 at 1189
 
 .
 

 Our Supreme Court has explained that a person is "in custody" for purposes of
 
 Miranda
 
 "when it is apparent from the totality of the circumstances that there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest."
 
 Garcia,
 
 358 N.C. at 396, 597 S.E.2d at 736.
 
 See
 

 California v. Beheler,
 

 463 U.S. 1121
 
 , 1125,
 
 103 S.Ct. 3517
 
 ,
 
 77 L.Ed.2d 1275
 
 (1983) (citing
 
 State v. Buchanan,
 

 353 N.C. 332
 
 , 340,
 
 543 S.E.2d 823
 
 , 828 (2001) ) (internal marks and citations omitted). And this determination must be made from the point of view of an objectionably reasonable person in the suspect's position, described by our Supreme Court as follows:
 

 [T]he United States Supreme Court has stressed that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. Unless they are communicated or otherwise manifested to the person being questioned, an officer's evolving but unarticulated suspicions do not affect the objective circumstances of an interrogation or
 
 *391
 
 interview, and thus cannot affect the
 
 Miranda
 
 custody inquiry.... [An officer's] unarticulated plan has no bearing on the question [of] whether a suspect was in custody at a particular time;
 
 the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.
 

 Buchanan,
 

 353 N.C. at 341-42
 
 ,
 
 543 S.E.2d at 829
 
 (emphasis added).
 

 In the present case, Defendant was clearly restrained when questioned about the jacket. He was seated on his cousin's front porch in handcuffs. And our Supreme Court has recognized that being handcuffed is a circumstance "supporting an objective showing that one is 'in custody[.]' "
 
 Buchanan,
 

 353 N.C. at 339
 
 ,
 
 543 S.E.2d at 828
 
 . Although, as the United States Supreme Court has explained,
 
 *491
 
 "[d]etermining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis, not the last. Not all restraints on freedom of movement amount to custody for purposes of
 
 Miranda.
 
 "
 
 Howes,
 

 132 S.Ct. at 1189
 
 .
 

 Based on the totality of the circumstances, we conclude that a reasonable person in Defendant's situation, though in handcuffs, would
 
 not
 
 believe his restraint rose to a level of restraint associated with a formal arrest.
 
 See
 

 Buchanan,
 

 353 N.C. at 339-40
 
 ,
 
 543 S.E.2d at 828
 
 . The regular conditions of probation in North Carolina include the requirement that a probationer "[s]ubmit at reasonable times to warrantless searches by a probation officer of the probationer's person and of the probationer's vehicle and premises while the probationer is present, for purposes directly related to the probation supervision." N.C. Gen.Stat. § 15A-1343(b)(13) (2015). During the search of Mr. Lewis' residence, Defendant was informed by law enforcement officers that he would be placed in handcuffs for the purpose of officer safety. He was never informed, at any point, that his detention would
 
 not
 
 be temporary. Further, as a probationer subject to random searches as a condition of probation, Defendant would objectively understand the purpose of the restraints and the fact that the period of restraint was for a temporary duration. Indeed, at the hearing on his motion to dismiss, Defendant testified that at the time of the search of Mr. Lewis' residence, he had been on probation for about two years. Defendant also testified that at the time he was placed on probation, the court explained to him the conditions of probation, including the possibility that he or his residence could be subject to warrantless searches.
 
 See
 

 Minnesota v. Murphy,
 

 465 U.S. 420
 
 , 430,
 
 104 S.Ct. 1136
 
 ,
 
 79 L.Ed.2d 409
 
 (1984) (holding that a probationer who is required to meet with his parole officer and answer questions is not "in custody" for
 
 *392
 

 Miranda
 
 purposes even though his freedom of movement is curtailed during the questioning).
 

 We believe this case is distinguishable from
 
 State v. Johnston,
 
 cited by Defendant, in which we held that a defendant was "in custody" for purposes of
 
 Miranda
 
 where the defendant was handcuffed.
 
 State v. Johnston,
 

 154 N.C.App. 500
 
 , 503,
 
 572 S.E.2d 438
 
 , 441 (2002). In that case, the officers told the defendant that he was in "secure custody" rather than under arrest. Our Court, however, concluded that "a reasonable person [in the defendant's] circumstances would believe that he was under arrest."
 

 Id.
 

 Specifically, in that case, not only was the defendant handcuffed, he was also ordered out of the vehicle at gunpoint and placed in the back of a police car where he was interrogated. In the present case, though, Defendant was not ordered at gunpoint to submit to handcuffs and he was allowed to remain on the front porch of his cousin's residence rather than forced into the back of a police vehicle.
 

 Defendant argues that the
 
 purpose
 
 of Defendant's custody changed after officers discovered the jacket and suspected contraband, as evidenced by the testimony of an officer that "the purpose of [her conduct] was to determine who [the jacket] and the contraband belonged to." Defendant contends that this entitled him to
 
 Miranda
 
 protections. However,
 
 Miranda
 
 is limited to
 
 custodial
 
 interrogations. Where the indicia of formal arrest are absent, the fact that "police have identified the person interviewed as a suspect and that the interview was designed to produce incriminating responses from the person are not relevant in assessing whether that person was in custody for
 
 Miranda
 
 purposes."
 
 In re W.R.,
 

 363 N.C. 244
 
 , 248,
 
 675 S.E.2d 342
 
 , 344 (2009).
 

 III. Conclusion
 

 Based on the totality of the circumstances, including the fact that Defendant was on probation during the search of Mr. Lewis' residence, we conclude that Defendant was not subjected to a formal arrest or a restraint on his freedom of movement of the degree associated with formal arrest. Therefore, we agree with the trial court that Defendant was not "in custody" for purposes of
 
 Miranda.
 
 Accordingly, the trial court properly denied Defendant's motion to suppress. We note that our decision does
 
 not
 
 stand for the proposition that a person on probation is
 
 never
 
 entitled to the protections
 
 *492
 
 of
 
 Miranda. See
 

 Murphy,
 

 465 U.S. at 426
 
 ,
 
 104 S.Ct. 1136
 
 .
 

 AFFIRMED.
 

 Judges CALABRIA and DIETZ concur.
 

 [1]
 

 Whether someone is "in custody" for purposes of
 
 Miranda
 
 is a "mixed question of law and fact."
 
 State v. Garcia,
 

 358 N.C. 382
 
 , 391,
 
 597 S.E.2d 724
 
 , 733 (2004). Defendant acknowledges in his brief that "virtually all of the operative facts in this case are uncontested." As a result, these facts are binding on appeal,
 
 State v. Brown,
 

 199 N.C.App. 253
 
 , 256-57,
 
 681 S.E.2d 460
 
 , 463 (2009), and our review is limited to whether the trial court's conclusions of law are legally accurate and "reflect a correct application of law to the facts found."
 
 Garcia,
 

 358 N.C. at 391
 
 ,
 
 597 S.E.2d at 733
 
 .